UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WALTER R. KRZASTEK, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> MODERN CONTINENTAL ) </br> CONSTRUCTION CO., INC., ) </br> ) </br> Defendant. ) | Miscellaneous Business Docket </br> No. 1:04-mc-10079 |

### DEFENDANT MODERN CONTINENTAL CONSTRUCTION CO., INC.'S EMERGENCY MOTION TO TEMPORARILY STAY TRUSTEE EXECUTION

Defendant Modern Continental Construction Co., Inc. ("Modern") hereby requests that this Court stay the March 25, 2004 Trustee Execution issued in this action until the United States District Court for the District of New Jersey rules upon Modern's to-be-filed Motion for Relief from Judgment and because the Plaintiff failed to comply with the requisite Massachusetts statutes and procedural rules for the issuance of said execution.

Modern submits the Affidavit of Paul A. Seppala in support of this Motion. A form of Proposed Order is attached hereto for the Court's convenience.

**IN SUPPORT OF ITS MOTION**, Modern states as follows:

### I. PROCEDURAL BACKGROUND

On March 30, 2004, Modern's senior management first became aware of the above-referenced action. Seppala Affidavit ¶ 4. In the hours since Modern became aware of the Plaintiff's action and the issuance of the Trustee Execution, Modern has been able to glean the following facts:

A. On or about November 26, 2003, Plaintiff filed a Complaint in the United States District Court for the District of New Jersey seeking damages for breach of contract and other claims. Plaintiff's Complaint sought $1,188,600.00 for compensation allegedly due Plaintiff for work performed by Modern, and another $2,000,000.00 of estimated damages alleged to be owed as a result of Modern's not bidding on additional work, based upon the assumptions that Modern would have been the successful bidder and that Modern would have profitability performed such work. Id. at 5.

B. Plaintiff allegedly served his Complaint on The Corporation Trust Company, Modern's alleged agent on December 8, 2003. Id. at 6.

C. Modern is presently unaware of why Modern's senior management did not become aware of Plaintiff's Complaint -- or the subsequent default judgment -- until yesterday afternoon. Id. at 7.

D. On December 31, 2003, Plaintiff's counsel sought a default judgment against Modern. The default was entered by the New Jersey District Court on January 6, 2004. Id. at 8.

E. On February 9, 2004, the New Jersey District Court entered the default judgment against Modern for both the $1,138,750 of fees and costs allegedly owed as a result of work performed by Modern, and for the $2,000,000.00 of fees Plaintiff alleged he did not earn as a result of Modern's failure to bid for work. Id. at 9.

F. On or about March 22, 2004, Plaintiff's counsel filed, in the Miscellaneous Business Docket of this Court, an Emergency Motion for Grant of an Ex-Parte Trustee Execution. The Court allowed said Motion on March 25, 2004. Id. at 10.

G.   Modern became aware of this action on March 30, 2004 when Constable John Keogh served Fleet Bank with a copy of the execution and a demand that Fleet pay over $3,252,121.65 of Modern's funds held by Fleet to satisfy the said execution. Id. at 11.

## II. ARGUMENT

A.   **Plaintiff Has Failed To Comply With The Requirements Of Mass. Gen. Laws Ann., Ch. 246, *Et Seq.* And Mass. R. Civ. P. 4.2 In Connection With Its *Ex-Parte* Trustee Process And, As A Result, The Writ Issued Is Ineffective.**

Although Fed. R. Civ. P. 64 and 69 create a process by which plaintiff may seek seizure of a defendant's property in aid of its execution and judgment, such a seizure under Rule 64 must be "…in the manner provided by the law of the state in which the district court is held…" and when in the aid of a judgment "…in accordance with the practice and procedure of the state in which the district court is held…." Thus, this Court must look to the law, practice and procedure in Massachusetts in enforcing a judgment against a trustee.

Plaintiff's failure to comply with the Massachusetts law and required procedures to attach/levy on a bank account, as required by Fed. R. Civ. P. 69(a), renders the writ ineffective. See Gabovitch v. Lundy, 584 F.2d 559 (1st Cir 1978). Under Massachusetts law, any attachment of a bank account must take place by trustee process. See Mass. Gen. Laws Ann., ch. 246, *et seq.* Furthermore, attachment on trustee process requires court approval and compliance with the specific process created by the legislature and proscribed by Mass. R. Civ. P. 4.2. "The statutes and rules regulating trustee process set out a mechanism whereby a third person may be "charged as a trustee" and when the plaintiff obtains a judgment against the defendant "a judgment enters against the trustee and a 'trustee execution' should be obtained from the court." Jordan L. Shapiro, *et al.*, Massachusetts Practice, Collection Law, vol. 48, §9.75 (2004).

The Gabovitch court explained the Massachusetts trustee process as follows:

> "Receipt of a trustee summons notifies a bank of attachment of a depositor's credits. Mass. Gen. Laws Ann., ch. 246, § 20; Mass. R. Civ. P. 4.2(b). But a trustee summons cannot issue without a prior court approval of the attachment. Mass. R. Civ. P. 4.2(c). Under the same rule, the attachment usually will not be approved without a prior adversary hearing. Once the trustee process issues, the trustee must answer specifying the property subjected to the attachment. Mass. Gen. Laws Ann., ch. 246 s 10. If the court then adjudges the bank to be a trustee, it must pay over to the creditor or be subject to a trustee writ of execution. Mass. Gen. Laws Ann., ch. 246 s 45." Gabovitch v. Lundy, 584 F.2d at 561, n. 3.

As explained, a trustee process begins with an application to the Court under Mass. R. Civ. P. 4.2 requesting that the Court to approve the attachment and issue a summons to the trustee. Such an application may occur *ex-parte*, upon findings by the Court: (i) that there is a reasonable likelihood that the Plaintiff will recover judgment in an amount equal to or greater than the amount of the trustee process over and above any liability insurance known or reasonably believed to be available, and that ... (ii) there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands and possession of the trustee and remove them from the state or will conceal them, or (iii) there is immediate danger that the defendant will dissipate the credits, or damage or destroy the goods to be attached on trustee process. See Mass. R. Civ. P. 4.2(g).

Once Plaintiff's application for trustee process has been approved by the Court, a summons shall be issued by the Court and shall be served within 30 days after the date of the order approving the attachment. See Mass. R. Civ. P. 4.2(b), (c). Promptly after the service of the trustee summons upon the trustee or trustees, a copy of the trustee summons with the officer's endorsement thereon of the date or dates of services **shall** be served upon the defendant in the manner provided by Rule 5. See Mass. R. Civ. P. 4.2(c) (emphasis added). Thus, the Defendant is entitled to notice of the approval of the trustee process after service of the trustee summons.

The notice requirement is especially compelling when the trustee process application was approved *ex-parte*, because the Defendant is entitled to appear before the Court and move for the dissolution of the trustee process. See Mass. R. Civ. P. 4.2(h).

Within 20 days of service of the trustee summons, the trustee shall file an answer disclosing "plainly, fully, and particularly what goods, effects or credits, if any, of the defendant were in the hands or possession of the trustee when the trustee summons was served upon him." Mass. Gen. Laws Ann., ch. 246, §10; Mass. R. Civ. P. 4.2(d). The answer of the trustee and the statements made therein are a necessary step for a creditor to obtain a judgment and execution against the trustee for the defendant's property. See Jordan L. Shapiro, *et al.*, Massachusetts Practice, Collection Law, vol. 48, §5.88 (2004).

The next step for a creditor pursuing trustee process is to file "…a motion to charge the trustee… for the purpose of obtaining an adjudication of the amount for which the trustee is to be charged or liable to pay." Jordan L. Shapiro, *et al.*, Massachusetts Practice, Collection Law, vol. 48, §5.90 (2004); see also M.G.L. ch. 246, §39; Jiang v. Wolf, 1998 Mass.App.Div. 137 (1998). "If the court determines that the alleged trustee is chargeable as such, that is, that the trustee does hold goods, effects, or credits of the defendant, the law indicates that there is to be a judgment to that effect." Jordan L. Shapiro, *et al.*, Massachusetts Practice, Collection Law, vol. 48, §5.96 (2004). Thus the Motion to charge the trustee may operate as adjudication against the trustee. If the plaintiff does not move to have the trustee charged for a particular amount before judgment, he or she may be precluded from attempting to enforce the judgment against the trustee. See Cunningham v. Hogan, 136 Mass. 407 (1884).

A judgment against the trustee is a "precondition to the issuance of a trustee execution." See Thompson-Durkee Co. v. Express Plumbing & Heating Co., 1994 Mass.App.Div. 190

(1994); see also Arthur D. Little, Inc. v. East Cambridge Sav. Bank, 35 Mass.App.Ct. 734 (1994), rev. den. 417 Mass. 1103 (1994). Accordingly, the Court has no authority to issue a Trustee Execution until the trustee has answered, the defendant has been given the required notice, the trustee has been charged and a judgment has entered against the trustee.

In this case, plaintiff has failed to comply with the Massachusetts process for the issuance of a trustee process. Plaintiff has merely made the first step of seeking this Court's approval, *ex-parte*, of the trustee process. The trustee must be served with a summons and permitted to answer. The defendant is entitled to notice of the trustee process and given the opportunity to seek dissolution of same. Only after receipt of the trustee's answer and a charge of the trustee as to the property it holds, may the plaintiff seek a judgment against the trustee and issuance of a trustee execution. Because plaintiff has failed to comply with the required trustee process procedure, its writ that has been served upon Fleet Bank is ineffective and plaintiff must begin the process anew. See Gabovitch v. Lundy, 584 F.2d 559 (1st Cir 1978).

**B.    The Court Should Stay the Payment of Funds by Fleet Pursuant to the Trustee Execution Until Such Time as Modern has had an Opportunity to Investigate this Matter and Seek Relief from the Default Judgment and the Revocation of the Execution.**

Modern's senior management only learned of Plaintiff's action, the default judgment and the Trustee Execution yesterday afternoon. Modern has not had an opportunity to investigate Plaintiff's claim that Modern was properly served with his Complaint, nor has Modern had an opportunity to investigate the facts or apply to the New Jersey District Court for relief from judgment pursuant to Fed. R. Civ. P. 60(b) based upon "excusable neglect" or other grounds. Modern also has meritorious defenses which it will assert if the judgment is dissolved. Seppala Affidavit ¶¶ 12, 13.

Modern requests that this Court stay payment of the judgment out of the Fleet accounts (all of which are either (i) payroll accounts, (ii) special purpose accounts; or (iii) accounts containing proceeds of Modern's accounts receivable that are subject to rights of subrogation and/or a valid/perfected lien of Modern's surety -- St. Paul and restricted accounts) for a very short time. See discussion below.

C.   **All of the Fleet Accounts are Payroll Accounts, Special Purpose Accounts or Accounts Containing Proceeds of Modern's Accounts Receivable and Are, Therefore, Not Subject to Trustee Process Under Massachusetts Law.**

The Fleet accounts consist of the following: (1) designated payroll; (2) special purpose funds; or (3) accounts receivable proceeds which are subject to rights of subrogation and/or perfected security interests and/or liens of Modern's creditors. Seppala Affidavit ¶ 14. Under Massachusetts General Laws, Chapter 246, § 20, the dedicated payroll accounts are specifically exempt from trustee process attachment. Likewise, special purpose accounts are subject to certain restrictions, which limit the rights creditors to reach such special purpose accounts to satisfy their claims. See In re Saugus General Hospital, 698 F.2d 42 (1st Cir. 1983). Moreover, some of the Fleet accounts in Modern's name are restricted accounts which trustee process may not attach. In order for any trustee process to attach money, it must be due and payable to the defendant absolutely and without any contingency. See M.G.L., ch. 246, § 24. For example, one of the accounts in Modern's name held by Fleet is a joint account with the State of New York which contains statutorily mandated escrow monies that have yet to become payable under the parties' construction contract. Thus, the account is contingent upon the State of New York's signature for release of any monies and the monies are not due and payable to Modern until certain preconditions of the contract are met for retainage release, this account is not subject to attachment via trustee process. Seppala Affidavit ¶ 15; see also M.G.L., ch. 246, § 24.

Furthermore, Modern's surety, St. Paul, has rights of subrogation and a valid and perfected lien as to any of Modern's accounts receivable which is entitled to priority over any attempt to attach said accounts. Seppala Affidavit ¶ 16. Thus, should any attachment be allowed as to Modern's accounts with Fleet, each account may need to be examined as to whether it is subject to trustee process.

### D. Modern Will Be Irreparably Harmed in the Absence of the Relief it Requests.

The immediate payment of Plaintiff's default judgment from Modern's bank accounts will cause various drafts issued by Modern to be returned for "insufficient funds," cause Modern to be in default of its obligations, damage Modern's credibility in the workplace, impair Modern's bonding capabilities and/or cause serious financial harm to Modern through a "domino-like" chain of events. Seppala Affidavit ¶ 17. A payment of the $3.252 million default judgment would create serious difficulties for Modern with respect to its primary lenders. Seppala Affidavit ¶ 18. On the other hand, in the absence of the immediate payment of the amount claimed by Plaintiff, Modern will continue to conduct its operations and, therefore, be in a position to pay Plaintiff's judgment, should this Court so order after Modern has had an opportunity to seek further relief from this Court or the District Court for New Jersey. Seppala Affidavit ¶ 19.

### E. Plaintiff Will Not Be Irreparably Harmed if the Relief Sought by Modern is Granted.

Plaintiff's default judgment has been in effect less than sixty (60) days. Plaintiff filed his action only four (4) months ago. There has been no determination, on the merits, that Plaintiff is entitled to the $3.252 million, the payment of which is sought at this time. In fact, $2 million of Plaintiff's $3.1 million underlying judgment is based on nothing more than Plaintiff's unchallenged estimate of what he would have been owed had Modern bid on certain power plant

jobs (and if Modern had successfully and profitably built those power plants). Modern has no intention of dissipating or transferring the money in the Fleet accounts. As is described above, such funds are dedicated to particular purposes and subject to prior perfected security interests. Seppala Affidavit ¶ 19. Plaintiff will not, therefore, suffer irreparable harm if the Court grants Modern the relief it has requested.

### III. CONCLUSION

For the foregoing reasons, Modern asserts: (a) that it has meritorious defenses to Plaintiff's claims; (b) that it should be permitted to seek further relief from this Court or the District Court for New Jersey; (c) that the present Trustee Execution is invalid; (d) that Modern will be irreparably harmed if Plaintiff's default judgment is paid immediately out of the Fleet accounts; (e) that the Plaintiff will not be irreparably harmed if payment pursuant to the Trustee Execution is stayed; and (f) that justice therefore requires that payment of the default judgment pursuant to the Trustee Execution be stayed for a sufficient time to allow Modern to seek further relief from this Court or the District Court for New Jersey.

Dated: March 31, 2004

Respectfully submitted,

Modern Continental Construction Co., Inc.
By its attorneys,

_____
Joel Lewin, BBO# 298040
Eric F. Eisenberg, BBO# 544682
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Telephone: 617-345-9000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record, by hand delivery/~~by United States Mail, postage prepaid and correctly addresse~~d this 31 day of March, 2004.

_____