UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER R. KRZASTEK,<br><br>Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL CONSTRUCTION CO., INC.,<br><br>Defendant. | Miscellaneous Business Docket No.<br>1:04-mc-10079 |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO TEMPORARILY STAY TRUSTEE EXECUTION

The Plaintiff Walter R. Krzastek ("Krzastek") hereby opposes the Defendant Modern Continental Construction Co., Inc. ("Modern")'s Emergency Motion to Temporarily Stay Trustee Execution. In support of this Opposition, the Plaintiff states the following:

### FACTUAL BACKGROUND

On November 26, 2003, the Plaintiff commenced an action against Modern Continental Construction Co., Inc. ("Modern") in the United States District Court, District of New Jersey (Case Number 03-CV-5698 (JAP/MCA)("the Action") seeking damages in the amount of $3,138,750.00 for Modern's breach of Krzastek's employment contract. While at Modern, Krzastek was employed as the Vice President of the Power Division.

According to the Return of Service filed with the New Jersey District Court), on December 9, 2003, the Complaint and Summons was served upon Modern through its registered agent in New Jersey, Corporation Trust Company ("CTC"), and was accepted by Marge Phillips of CTC. (Return of Service, attached hereto as Exhibit A).

Furthermore, in addition to proper service of the Summons and Complaint on Modern's registered agent, the Plaintiff has personal knowledge that Modern, including its "senior management," was aware of the Action filed against it and chose to ignore it. Specifically, following the service of the Summons and Complaint, Krzastek had a conversation with Brian McNamara, an Executive Vice President at Modern, in which Mr. McNamara relayed to Krzastek that the Action was discussed at a meeting at Modern and that Modern decided that it would simply do nothing about the suit because Krzastek was deemed to be an unsecured creditor. (Affidavit of Walter R. Krzastek, attached hereto as Exhibit B). This conversation was also witness by Thomas Buchanan, who was the Director of Operations for Modern. (Exhibit B). Furthermore, Mr. McNamara told Krzastek that Terry Powers, Modern's in-house counsel, informed him that Krzastek had sued Modern. (Exhibit B). Mr. McNamara also informed Krzastek that John Pastore, the President of Modern, was angry that Krzastek filed the Action against Modern. (Exhibit B). Further, from December, 2003 to March, 2004, Mr. McNamara asked Krzastek on numerous occasions about the status of the Action against Modern. (Exhibit B).

Upon information and belief, the Chief Executive Officer of Modern, Les Marino, was also aware of the suit because Mr. McNamara informed Krzastek that Mr. Marino had asked Mr. McNamara whether he would sue Modern if he was owed money. (Exhibit B). Mr. McNamara indicated that he did not intend to sue, but told Mr. Marino that Krzastek was owed the money he was seeking and should be paid. Mr. Marino informed Mr. McNamara that Modern had no money and could not pay Krzastek. (Exhibit B).

In addition to Mr. McNamara, another Modern employee, Mark Randazzo, told Krzastek that Alber Yusoff, Chief Estimator for the New York office, stated that Krazstek was making a lot of trouble and ruining Modern as a result of his Action against it. (Exhibit B).

Modern was defaulted on December 31, 2003 for failing to Answer the Complaint. (Certified copy of the Final Judgment, attached hereto as Exhibit C). On February 9, 2004, the New Jersey District Court (Pisano, J.) entered Judgment in favor of Krzastek for $3,138,750.00. (Exhibit C). Judge Pisano specifically found that service of a copy of the Summons and Complaint was effectuated by service upon Modern's registered agent for service of process in New Jersey, Corporation Trust Company ("CTC"), in Trenton, New Jersey. (Exhibit C; See also Exhibit A). Furthermore, the Court found that the Defendant failed to plead or otherwise defend the Action and good cause was shown for the issuance of the Final Judgment. (Exhibit C).

The Judgment was entered on the docket on February 10, 2004. (Certification of Judgment for Registration in Another District, attached hereto as Exhibit D). Upon information and belief, the Court served the Default and the Judgment upon the Defendant. Thereafter, the Defendant failed to file a notice of appeal or any motion related to the Judgment in a timely manner. (Exhibit D).

On March 11, 2004, the Certified Judgment was registered with this Court. (Docket, attached hereto as Exhibit E). The Judgment has not been satisfied. (Affidavit of Peter J. Pizzi, attached hereto as Exhibit F).

Beginning on March 2, 2004, counsel for the Plaintiff, Windy L. Rosebush, Esq., was in regular contact with the Miscellaneous Business Docket Clerk, Deborah Keefe, concerning the proper procedure for certifying the judgment and seeking a trustee execution in the Federal District Court, for the District of Massachusetts. (Affidavit of Windy L. Rosebush, Esq., attached hereto as Exhibit G). Pursuant to the instructions of the Clerk, on March 22, 2004, the Plaintiff filed an Emergency Motion for Grant of Ex-Parte Trustee Execution with this Court. (Exhibit G). On March 25, 2004, this Court (Gertner, J.) allowed the Plaintiff's Emergency Motion and executed the Trustee Execution for Fleet. (Exhibit G; Allowance and Trustee Execution, attached

hereto as Exhibit H). On March 29, 2004, the Plaintiff obtained a copy of Judge Gertner's allowance of the Motion and the executed Trustee Execution. (Exhibit G). The following day, March 30, 2004, the Plaintiff through its Special Process Server, John Keough, served the Trustee Execution on Fleet Bank, which froze the assets held by Modern pursuant to the Trustee Execution. (Exhibit G). However, the funds owed to the Plaintiff pursuant to the Trustee Execution were not dispersed pending Fleet's inquiry into the identity of the holders of various "Modern Continental" accounts, as well as the nature of those accounts. (Exhibit G).

The Defendant's Emergency Motion to Temporarily Stay Trustee Execution is the first action Modern has taken in response to the Plaintiff's Complaint, the Default, or the Judgment.

## ARGUMENT

### I. PLAINTIFF HAS COMPLIED WITH FED.R.CIV.P. 64 AND 69 AS WELL AS MASS.R.CIV.P. 4.2.

Pursuant to Fed.R.Civ.P. 64 and 69, the Federal Court may permit a Plaintiff to seize property to secure a judgment "in the manner provided by the law of the state in which the district court is held." Mass.R.Civ.P. 4.2(g) permits the Court to enter an order ex-parte approving a Trustee Process for a specific amount upon the finding by the Court that: 1) there is a reasonable likelihood the plaintiff will recover judgment in the amount equal to or greater than that sought by the trustee process over an above the liability insurance known to exist; and 2) there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands and possession of the trustee or dissipate the credits held by the trustee.

The Defendant relies on Gabovitch v. Lundy, 584 F.2d 559 (1st Cir. 1978) in support of its argument that the Plaintiff has failed to comply with the requirements for obtaining a trustee execution. However, Gabovitch, is wholly inapposite to the present matter. In Gabovitch, the

First Circuit Court of Appeals held that the writ of execution was not enforceable because it issued solely on the authority of the court clerk and had no effect on a bank account under Massachusetts law, which requires court approval of a trustee execution. Here, the Plaintiff, at the direction of the Court Clerk, filed a Motion seeking a trustee execution from the Court. The Motion was presented to Judge Gertner, who allowed the Motion and executed the Trustee Execution. There can be no argument that the Trustee Execution signed by Judge Gertner herself was not "approved by the Court."

This is not a case where suit has been filed and the Plaintiff anticipates a judgment in his favor, and therefore seeks to attach property held by a Trustee in order to satisfy a later judgment as anticipated by Rule 4.2 and Mass.Gen.Laws ch. 246, § 1, *et seq*. Here, the Plaintiff has a Certified Judgment in his favor in the amount of $3,138,750. (Exhibit C). Therefore, the Plaintiff was entitled to an immediate Trustee Execution as to the Fleet accounts as there is no doubt that Krzastek is entitled to recover the amount sought in the Trustee Execution.

In addition, Fleet has received notice of the Trustee Execution by in-hand service by the special process server and is clearly a trustee holding assets of Modern's as set forth in the Defendant's Motion and supporting Affidavit. Modern has also clearly received notice of the Trustee Execution as evidenced by its Emergency Motion. The Plaintiff is only required to "promptly serve" trustee process. The Trustee Execution was served on Fleet on March 30, 2004 and counsel for the Plaintiff was still waiting to hear from Fleet on March 31, 2004 as to its position on the accounts when the Defendant filed its Emergency Motion. Since, the request for a Trustee Execution was ex-parte, it would defeat the purpose if the Plaintiff notified Modern of the service before the time that Fleet had advised the Plaintiff of its position regarding the Trustee Execution.

Furthermore, Krzastek's Affidavit filed in Support of the Motion seeking the Trustee Execution established the clear and present danger that the funds in the Fleet Account(s) would be transferred or dissipated if notice of the Trustee Execution was given, and certified that there is no known insurance coverage available to satisfy the Judgment. (Affidavit of Walter R. Krzastek in Support of Trustee Execution, attached hereto as Exhibit I). The Defendant's own Emergency Motion supports Krzastek's position that Modern is in serious financial trouble to the point where its surety allegedly has a valid and perfected lien over Modern's accounts receivable, which lien was not attached to the Defendant's Emergency Motion. The surety's legal status as to the funds in the Fleet accounts is unclear. What is apparent, however, is that there is a legitimate risk that Modern will seek to avoid payment of the Judgment, justifying the issuance of the ex-parte Trustee Execution.

Based upon the foregoing, this Court properly issued the Trustee Execution in accordance with Mass.R.Civ.P. 4.2 and Fed.R.Civ.P. 64 and 69 and Fleet should be ordered to immediately disburse the funds held in Modern's account which are subject to execution and not otherwise exempt by law. However, even assuming *arguendo* that a Judgment Creditor is required to follow the pre-judgment trustee process procedure set forth in Rule 4.2 and Mass.Gen.Laws, ch. 246, § 1 *et seq.*, a Trustee Summons should issue to Fleet, and Fleet should be required to freeze Modern's accounts and identify the amount it holds as trustee within seven (7) days[1]. Once the amount has been identified, the Court should charge Fleet immediately with that amount and enter a Judgment and Execution ordering Fleet to turn that amount over to the Plaintiff forthwith in light of the Plaintiff's Judgment against the Defendant. If the Trustee Execution is vacated in its entirety without a Trustee Summons issuing immediately in its place, Modern will likely remove its assets

---

[1] The Court may reduce the time the trustee has to answer pursuant to Mass.R.Civ.P. 4.2(d) from twenty (20) days to a shorter period.

from the Fleet accounts or otherwise dissipate the funds thereby avoiding payment of the Judgment to the Plaintiff.

II.  **MODERN HAD THE OPPORTUNITY TO "INVESTIGATE THIS MATTER" AND DEFEND THE ACTION BUT FAILED TO DO SO WITHOUT GOOD CAUSE.**

The language used by Modern and in the Affidavit of Paul A. Seppala ("Seppala") in support of the Defendant's Motion for a temporary stay of the Trustee Execution is telling. Modern and Seppala claim that "on March 30, 2004, Modern's senior management first became aware of [the Action]." The senior management's alleged ignorance of the suit, however, is inconsequential even if found to be credible. The Return of Service conclusively proves that Modern was served with the Summons and Complaint by its registered agent in New Jersey, CTC. (Exhibit A). Furthermore, a denial that Modern was actually served is glaringly omitted from Modern's Motion and Seppala's Affidavit, which simply states that Modern was "allegedly served" through its agent.

To the contrary, the Plaintiff has filed an Affidavit in addition to the Return of Service that refutes the allegation that "senior management" was unaware of the Action. (Exhibit B). Furthermore, neither the Motion nor the Seppala's Affidavit allege that Modern was not actually served with notice of the default or entry of the Judgment by the Court in New Jersey, even if senior management was "unaware of it."

Modern has had ample time, since December, 2003, to respond to the Action, which it received by means of proper service, and was aware of upon information and belief. Modern's choice not to defend the action should not be excused by allowing this back door attack on the Judgment or by delaying the Trustee Execution properly issued in furtherance of the Judgment.

In light of the duly issued Judgment registered with this Court and the Trustee Execution issued by this Court on March 25, 2004, the Defendant's Emergency Motion to Temporarily Stay Trustee Execution should be denied and Fleet should be ordered to immediately disburse all funds held in Modern's accounts that are not otherwise protected from execution by law, or, at a minimum, to pay that amount into the Court to be held in escrow pending Modern's "to-be-filed" Motion for Relief from Judgment.

### III.  EXECUTION ON THE FLEET ACCOUNTS.

The Plaintiff does not dispute that payroll accounts are exempt from attachment pursuant to provisions of Mass.Gen.Laws. c. 246, § 20. Nor does the Plaintiff seek to obtain funds from Fleet that Fleet is not authorized by law to attach, for example, if the Defendant's surety has a perfected lien or other legal interest in the funds which supercedes the Plaintiff's interest. The Plaintiff merely seeks those funds in the Fleet accounts subject to the Trustee Execution which are in excess of the funds protected by law or subject to the surety's superceding legal interest. Upon information and belief, there are funds and accounts subject to execution on those terms currently held by Fleet. Rather than staying the Trustee Execution on the grounds that some of the accounts are exempt, the Court should order Fleet to release only those funds subject to execution to the Plaintiff forthwith.

### IV.  PLAINTIFF WILL BE AND HAS BEEN HARMED BY MODERN'S ACTIONS.

The Plaintiff's Judgment is for monies owed pursuant to an employment contract in excess of three million dollars that has gone unpaid since at least December, 2002. As such, the Plaintiff has been and continues to be harmed. On the contrary, nothing in Seppala's Affidavit or Modern's Emergency Motion suggests that Modern cannot continue to operate using funds

available to it outside of the Fleet accounts. That the payment of the Judgment would cause Modern alleged serious difficulties to Modern is of no consequence since a Judgment has been entered for amounts due under an employment contract and Modern did nothing to defendant the underlying suit. Further delays by Modern should not be permitted and their failure to respond to the Action should not be rewarded with a stay of the Trustee Execution.

## CONCLUSION

For the aforementioned reasons, the Plaintiff requests that the Court deny the Defendant's Emergency Motion to Temporarily Stay Trustee Execution and order Fleet to immediately disburse any funds it holds in Modern's accounts, which are subject to execution by law. Alternatively, the Plaintiff requests that a Trustee Summons issue immediately to Fleet, and Fleet should be required to freeze Modern's accounts and identify the amount it holds as trustee within seven (7) days[2]. Once the amount has been identified, the Court should charge Fleet immediately with that amount and enter a Judgment and Execution ordering Fleet to turn over that amount which is subject to execution by law to the Plaintiff forthwith.

Walter R. Krzastek,
By his attorney,

Windy L. Rosebush (BBO No. 636962)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

Date: April 1, 2004

---

[2] The Court may reduce the time the trustee has to answer pursuant to Mass.R.Civ.P. 4.2(d) from twenty (20) days to a shorter period.

BOS_440224_1/WROSEBUSH

## **CERTIFICATE OF SERVICE**

I, Windy L. Rosebush, hereby certify that a true copy of the above document was served upon Eric F. Eisenberg, Hinckley Allen Snyder LLP 28 State Street, Boston, MA 02109-1775 and Michael Vhay, Piper Rudnick, One International Place, 21st Floor, Boston, Massachusetts 02110-2600 on April 1, 2004 by hand.

_____
Windy L. Rosebush