UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WALTER R. KRZASTEK,<br><br>    Plaintiff,<br><br>v.<br><br>MODERN CONTINENTAL<br>CONSTRUCTION CO., INC.,<br><br>    Defendant. | Miscellaneous Business Docket<br>No. 1:04-mc-10079 |

**PLAINTIFF'S OPPOSITION TO ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISSOLVE TRUSTEE EXECUTION AND FLEET BOSTON'S MOTION FOR RELIEF FROM EX-PARTE TRUSTEE EXECUTION**

Plaintiff Walter R. Krzastek ("Plaintiff") hereby opposes the motion filed by St. Paul Fire and Marine Insurance Company ("St. Paul") seeking to dissolve or stay the Trustee Execution issued by this court on March 25, 2004. Plaintiff also opposes the motion filed by Fleet Boston N.A. ("Fleet"), as trustee of defendant Modern Continental Construction Co., Inc. ("Modern"), seeking to stay the Trustee Execution. St. Paul's Motion should be denied because Plaintiff complied with the applicable state practice and procedure for obtaining a Trustee Execution and because St. Paul has not met its burden of establishing substantive rights in all of Modern's bank accounts at Fleet (the "Accounts") superior to Plaintiff. Fleet's Motion should be denied because it too has not met its burden of establishing substantive rights in the Accounts superior to Plaintiff.

Plaintiff therefore requests that the Court deny the Motions of St. Paul and Fleet and order Fleet to disburse immediately any funds it holds in the Accounts that are subject to

1

execution by law to satisfy the Judgment obtained by Plaintiff against Modern. Alternatively, Plaintiff requests that the Court stay payment on the Trustee Execution pending a determination of the interests of St. Paul and Fleet in the Accounts, confirm and clarify that the Accounts were and continue to be effectively frozen and attached by service of the Trustee Execution, and order Fleet to identify the Accounts and monies it holds as trustee within seven (7) days.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2003, Plaintiff commenced an action against Modern in the United States District Court, District of New Jersey (Case Number 03-CV-5698 (JAP/MCA)) for Modern's breach of Plaintiff's employment contract. According to the Return of Service filed with the New Jersey District Court, on December 9, 2003, the Complaint and Summons was served upon Modern through its registered agent in New Jersey, Corporation Trust Company ("CTC"), and was accepted by Marge Phillips of CTC. (Return of Service, attached hereto as Exhibit A).[1]

Modern was defaulted on December 31, 2003 for failing to answer the Complaint. On February 9, 2004, the New Jersey District Court (Pisano, J.) entered a Final Judgment in favor of Krzastek for $3,138,750.00. A certified copy of the Final Judgment is attached hereto as Exhibit B. Judge Pisano specifically found that service of a copy of the Summons and Complaint was effectuated by service upon Modern's registered agent for service of process in New Jersey. The Court also found that Modern failed to plead or otherwise defend the lawsuit and that good cause was shown for the issuance of the Final Judgment. Id.

---

[1] In addition to proper service of the Summons and Complaint on Modern's registered agent, Plaintiff has personal knowledge that Modern was aware of the lawsuit filed against it and chose to ignore it. For example, following the service of the Summons and Complaint, Plaintiff had a conversation with Brian McNamara, an Executive Vice President at Modern, in which Mr. McNamara stated to Plaintiff that the lawsuit was discussed at a meeting at Modern and that Modern decided that it would simply do nothing about the lawsuit because Plaintiff was deemed to be an unsecured creditor. See Affidavit of Walter R. Krzastek, Exhibit B to Plaintiff's Opposition to Defendant's Emergency Motion to Temporarily Stay Trustee Execution (Docket No. 11).

On March 10, 2004, the New Jersey District Court issued a Certification of Judgment for Registration in Another District. See Exhibit C attached hereto. Thereafter, Modern failed to file a notice of appeal or any motion related to the Final Judgment in a timely manner.

On March 11, 2004, the Certified Judgment was registered with this Court. The Judgment has not been satisfied. See Affidavit of Peter Pizzi in Support of Registration of Foreign Judgment, attached as Exhibit D to Plaintiff's Emergency Motion for Grant of Ex Parte Trustee Execution (Docket No. 3). Beginning on March 2, 2004, predecessor counsel for the Plaintiff, Windy L. Rosebush, Esq., was in regular contact with the Miscellaneous Business Docket Clerk, Deborah Keefe, concerning proper procedure for certifying the judgment and seeking a trustee execution in the Federal District Court for the District of Massachusetts. See Affidavit of Windy L. Rosebush, Esq. attached as Exhibit G to Plaintiff's Opposition to Defendant's Emergency Motion to Temporarily Stay Trustee Execution (Docket No. 11). Pursuant to the instructions of the Clerk, on March 22, 2004, Plaintiff filed an Emergency Motion for Grant of Ex-Parte Trustee Execution with the Court. In its Motion, Plaintiff explained why it was entitled to ex parte relief under Fed.R.Civ.P. 64 and 69 and Mass.R.Civ.P. 4.2(g).

On March 25, 2004, this Court (Gertner, J.) allowed Plaintiff's Emergency Motion and approved the Trustee Execution for Fleet. Copies of the Court's endorsement of the Motion and the Trustee Execution are attached hereto as Exhibit D.

On March 30, 2004, Plaintiff through its Special Process Server, John Keough, served the Trustee Execution on Fleet, which froze Modern's Accounts held by Fleet. However, the funds owed to the Plaintiff pursuant to the Trustee Execution were not disbursed pending Fleet's inquiry into the identity of the holders of various "Modern Continental" accounts, as well as the nature of those accounts.

On March 31, 2004, Modern filed an emergency motion seeking to stay the Trustee Execution. The same day, Judge Gertner ordered "1. That <u>payment</u> of the default judgment by Fleet Bank pursuant to the Trustee Execution . . . be stayed for a limited period of time not to exceed 30 days; and 2. That the Court will hear further motions with respect to the validity of the Trustee Execution, in the event that this Court and/or the District Court for New Jersey denies Defendant's to-be filed motion for relief from judgment" (emphasis added).[2]

On April 1, 2004, St. Paul and Fleet filed their motions. In its Motion, St. Paul seeks to dissolve the Trustee Execution on the grounds that it was obtained without following proper procedure. In the alternative, St. Paul requests a stay of the Trustee Execution pending a determination pursuant to M.G.L. c. 246, § 33, of the interests of St. Paul and its fellow alleged senior secured creditors in any accounts subject to the Trustee Execution. Fleet does not seek to dissolve the Trustee Execution but rather requests a stay of the Trustee Execution until an investigation can be made into the "ownership rights" of Fleet and other third parties in the Accounts.

## ARGUMENT

I. **ST. PAUL'S MOTION TO DISSOLVE THE TRUSTEE EXECUTION SHOULD BE DENIED**

   A. **Plaintiff Has Complied With Applicable State Practice And Procedure For Obtaining a Trustee Execution.**

Pursuant to Fed. R. Civ. P. 64 and 69, a federal court may permit a plaintiff to seize property to secure a judgment "in the manner provided by law of the state in which the district court is held." Mass. R. Civ. P. 4.2(g) permits the Court to enter an order ex-parte approving a Trustee Process for a specific amount upon the finding by the Court that: (1) there is a reasonable

---

[2] The Court issued its March 31 Order without the benefit of Plaintiff's Opposition to Defendant's Emergency Motion to Temporarily Stay Trustee Execution, which was filed the next day, April 1, 2004.

4

likelihood the plaintiff will recover judgment in the amount equal to or greater than that sought by the trustee process over and above the liability insurance known to exist; and (2) there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods and credits from the hands and possession of the trustee or dissipate the credits held by the trustee.

Plaintiff clearly met the first criterion set forth in Mass.R.Civ.P. 4.2(g) as evidenced by the Certified Judgment in his favor in the amount of $3,138,750. There has been no appeal or other motion filed in the New Jersey District Court or this Court contesting the Judgment. In fact, despite the allegations of the parties, Modern has yet to file a motion to be relieved from the judgment in the District of New Jersey. Moreover, neither St. Paul nor Fleet disputes that Plaintiff is entitled to recover the amount sought in the Trustee Execution. In addition, Plaintiff's Affidavit submitted in support of Plaintiff's Emergency Motion for Grant of Ex-Parte Trustee Execution ("Krzastek Affidavit") demonstrated the likelihood that the funds held by Fleet would be transferred or dissipated if notice of the Trustee Execution was provided to Modern. The Krzastek Affidavit also certified that there was no known insurance coverage available to satisfy the Judgment. See Krzastek Affidavit, attached as Exhibit E in support of Plaintiff's Motion for Grant of Ex Parte Trustee Execution.

St. Paul relies upon Gabovitch v. Lundy, 584 F.2d 559 (1st Cir. 1978) in support of its argument that Plaintiff did not comply with the proper requirements for obtaining a trustee execution. However, Gabovitch is inapplicable to the present matter. In Gabovitch, the First Circuit Court of Appeals held that the writ of execution was not enforceable because it issued solely on the authority of the court clerk and had no effect on a bank account under Massachusetts law, which required court approval of a trustee execution. Here, Plaintiff, at the direction of the Court Clerk, filed a Motion seeking a trustee execution from the Court. The

5

enforcement of a foreign judgment by motion (without filing a new separate action) is an acceptable and proper procedure. See Board of Commissioners of Stark County, Ohio v. Cape Stone Works, Inc., 206 F. Supp. 100, 103-104 (D. Mass. 2002). The Motion was presented to Judge Gertner, who allowed the Motion and signed the Trustee Execution. Thus, the Trustee Execution was approved by the Court.

Additionally, this is not a case where a plaintiff merely anticipates a judgment in his favor and requests the attachment of property held by a Trustee in order to satisfy an anticipated judgment under Mass.R.Civ.P. Rule 4.2. Rather, in the instant matter, Plaintiff already has obtained a Certified Judgment in his favor in the amount of $3,138,750. Plaintiff is entitled not only to attachment by trustee process of the Accounts, but also to execution on the Judgment it has already obtained.

St. Paul's argument that certain steps required by Mass.Gen.Laws Chapter 246 and Mass.R.Civ.P. 4.2 have not been followed elevates form over substance:

- St. Paul claims that no "trustee summons" has issued. Yet the Trustee Execution approved by the Court and served on Fleet performs the same function, i.e. freezing Modern's funds held by Fleet and requiring Fleet to identify the nature and amount of those funds.

- St. Paul claims that Fleet has filed no answer specifying the funds in its possession, yet Fleet's Motion for Relief from Ex Parte Trustee Execution discusses those very funds.

- St. Paul claims that the Court has not rendered any determination of its alleged senior interests in the accounts, yet its Motion asks the Court to do exactly that.

As set forth in arguments I.C. and II below, neither St. Paul nor Fleet has demonstrated that it has any interest in the Accounts that is superior to Plaintiff's interest in the Accounts. Accordingly, because this Court properly issued the Trustee Execution in accordance with Mass.R.Civ.P. 4.2 and Fed.R.Civ.P. 64 and 69, Fleet should be ordered to disburse immediately

6

to Plaintiff the funds held in the Accounts that are subject to execution and not otherwise exempt by law.

**B.    Even If The Procedure Was Improper, The Remedy Granted By This Court Should Not Be To Dissolve The Trustee Execution, But To Continue The Court's Order Staying Payment On The Execution, And Order That The Trustee Execution Be Treated As A Valid Trustee Process Attachment.**

Even assuming, *arguendo,* that a judgment creditor is required to follow the pre-judgment trustee process procedure described in St. Paul's Motion in order to obtain a trustee execution, and this Court finds that its granting of the Trustee Execution was improper, then the Trustee Execution simply should be treated as a valid Trustee Summons or attachment which issued to Fleet on March 25, 2004. At the very least, this Court should confirm that the funds held by Fleet have been attached since March 25, 2004 and should remain frozen until further order of this Court. The Court should order Fleet to identify the nature and amount of all of Modern's funds it holds as trustee within seven (7) days.[3] The Court also should order that the Plaintiff may then seek discovery regarding those funds and any alleged interests therein held by St. Paul and Fleet, after which the parties may file dispositive motions regarding their respective interests in the funds.

This remedy is consistent with the requests of both St. Paul and Fleet that enforcement of the Trustee Execution be stayed pending investigation of their alleged interests in the funds. By issuing an order confirming that the Trustee Execution will be treated as a summons attaching Modern's funds at Fleet, Plaintiff's rights in these accounts will be protected pending a final determination of this matter. As explained above, Plaintiff's submissions in support of obtaining a Trustee Execution demonstrated at the very least that it is entitled to a trustee attachment under

---

[3] The Court may reduce the time the trustee has to answer pursuant to Mass.R.Civ.P. 4.2(d) from twenty (20) days to a shorter period. Twenty-two (22) days already have passed from the date Fleet was served with the Trustee Execution.

7

Mass.R.Civ.P. 4.2. Indeed, neither Fleet nor St Paul has claimed that Plaintiff has failed to meet the requirements for a trustee attachment.

### C. St. Paul Has Not Met Its Burden Of Establishing Substantive Rights In The Accounts Superior To Plaintiff.

In addition to challenging the Trustee Execution on procedural grounds, St. Paul has claimed that the Trustee Execution is invalid because its interests in the Accounts are superior to Plaintiff's interests. However, St. Paul has not established that it holds a valid security interest in the Accounts. Moreover, assuming, *arguendo*, that St. Paul holds a prior in time security interest in the Accounts, St. Paul cannot invalidate the rights of junior secured creditors, such as Plaintiff, to foreclose against collateral of the debtor. St. Paul's only right is the entitlement afforded to it under Article 9 of the Uniform Commercial Code ("UCC") and then only to the extent of the amount of its prior senior perfected security interest.

In its motion, St. Paul asserts that it is a senior secured creditor of Modern in two ways. First, St. Paul claims that it and its affiliates have issued surety bonds on behalf of Modern for work under certain construction contracts (the "Bonded Contracts") subject to the terms of certain indemnification agreements (the "Indemnity Agreements"). It is under these Indemnity Agreements that St. Paul claims a security interest in the Accounts. See Motion of St. Paul Fire and Marine Insurance Company to Dissolve Trustee Execution ("St. Paul's Motion"), ¶ 2. Second, St. Paul asserts that, as the agent for a group of senior secured creditors, it was granted security interests in the Accounts pursuant to two amended and restated credit and security agreements (the "Security Agreements"). Id., ¶¶ 3, 7. St. Paul has not demonstrated a valid security interest in the funds held in the Fleet accounts under either argument.

In order for St. Paul to have a valid security interest in the Accounts, it must show that "the debtor has authenticated a security agreement that provides a description of the collateral

8

...." M.G.L. c. 106, § 9-203(b)(3)(A). If the security agreement does not describe the Accounts as collateral, the security interest is not enforced "against the debtor or third parties with respect to the collateral and does not attach ...." Id.,§ 9-203(1). The General Agreement of Indemnity attached to St. Paul's Motion fails to describe bank deposit accounts as an item of collateral. See General Agreement of Indemnity, ¶ 12, attached to UCC Financing Statement, Exhibit A to St. Paul's Motion. Although under ¶ 18 of the Indemnity Agreement the surety may add schedules to describe specific items of security covered by the Indemnity Agreement, there are no schedules attached to the Indemnity Agreement that list bank deposit accounts in general or the Accounts in particular. Id. As a result, St. Paul has not met its burden of establishing that the Indemnity Agreements provide it with a perfected security interest in the Fleet accounts. See In re Levitz Ins. Agency, Inc., 152 B.R. 693 (D.Mass 1992) (insurance agency could claim security interest only in customer lists, not customer accounts, where security agreement referenced only customer lists).[4]

Second, St. Paul has not demonstrated that it has a security interest under any other security agreement. Although the UCC-1 Statements attached as Exhibits B and C to St. Paul's Motion reference two different 2003 credit or security agreements, these agreements are not attached to St Paul's motion.[5] Moreover, St. Paul has not submitted any affidavit describing the agreements. In ¶ 7 of St. Paul's Motion, St. Paul asserts that its Security Agreements provide for a security interest in Modern's deposit accounts, yet St. Paul offers no evidence to support its

---

[4] Nor has St. Paul shown that it has "control" of the Fleet accounts pursuant to the Indemnity Agreement, as required in order to obtain a priority security interest in deposit accounts. See M.G.L. c. 106, §§ 9-104, 9-203(b)(3)(D).

[5] The Financing Statement dated October 3, 2003 (Exhibit B to St. Paul's Motion) references, in its Exhibit A, a Credit and Security Agreement (and Guaranty Agreement) dated on or about October 3, 2003. The Financing Statement dated July 25, 2003 (Exhibit C to St. Paul's Motion) also references, in its Amendment dated September 17, 2003, a Credit and Security Agreement (and Guaranty Agreement) dated July 24, 2003. Neither of these agreements is attached to St. Paul's Motion.

9

claims. St. Paul has submitted UCC-1 statements suggesting an interest in deposit accounts, but these are insufficient evidence of a secured interest. See M.G.L. c. 106, § 9-203(1)(b); In re Numeric Corp., 485 F.2d 1328, 1331 (1st Cir. 1973) (a statement alone does not establish a security interest). As a result, there is no evidence before the Court that would warrant finding that St. Paul has a prior perfected security interest under these alleged Security Agreements.

Finally, St. Paul only has rights to the extent Modern is indebted to it as of the time of the levy. St. Paul has submitted no evidence of what, if any, debt is owed by Modern. Rather, in its motion, St. Paul only claims that it and its affiliates "have over $100 million in exposure" and that St. Paul has "advanced funds or made other financial accommodations to or on behalf of Modern." St. Paul's Motion, ¶¶ 4, 6. However, St. Paul does not describe the nature or amount of the alleged debt owed by Modern. Because there is no evidence before the Court whether or to what extent Modern is indebted to St. Paul, St Paul has failed to establish that it has any superior rights to the funds held in the Accounts.

Accordingly, St. Paul has failed to meet its burden of establishing superior entitlement to the deposit account funds, and the Trustee Execution should not be dissolved and the stay should not be extended. Fleet should be ordered to disburse immediately the funds held in Modern's account which are subject to execution and not otherwise exempt by law.

## II.    FLEET'S MOTION FOR RELIEF FROM TRUSTEE EXECUTION SHOULD BE DENIED

Although Fleet's Motion offers almost no information about Modern's accounts and provides no basis as to why "other entities," including Fleet, may have claims to the Accounts superior to Plaintiff, Fleet still seeks relief from the Trustee Execution issued by this Court in favor of the Plaintiff. In its Motion, Fleet states that it recently entered into a Credit Agreement

with Modern and its affiliates. Fleet's Motion, ¶ 2. Fleet also claims that under this Credit Agreement, Modern's "indebtedness" to Fleet exceeds $40 million. Id. However, Fleet fails to provide Plaintiff or the Court with the entire Credit Agreement, or with any description of the nature of the "indebtedness" by Modern to Fleet, or whether there exists any default under the Credit Agreement (other than any default triggered by the Judgment obtained by Plaintiff against Modern).

Fleet also asserts that under the Credit Agreement, Fleet has the right to setoff in the case of an event of default, which is defined to include, among other things, a final judgment against Modern in the amount of $1 million or more. Id., ¶ 3. Although Fleet asserts that this setoff right has been triggered by the entry of judgment against Modern in the New Jersey District Court, thus giving it priority over Plaintiff's interest in the Accounts, Fleet fails to state whether it considers Modern to be in default under the Credit Agreement and that it, in fact, has even declared such a default. Indeed, Fleet has submitted no evidence that it declared Modern in default under the Credit Agreement prior to Plaintiff's levy, or that it made demand on Modern for repayment of any sum, or notified Modern that it was exercising setoff rights with respect to the Accounts. In order to exercise any setoff rights in the bank deposit accounts, Fleet must do these things. See Saugus General Hospital, Inc. v. Saugus Bank & Trust Co., 698 F.2d 42, 47-48 (1st Cir. 1983). As there is no evidence that Modern actually has been declared in default in the amount of its alleged debt to Fleet, and that Fleet actually has exercised any setoff rights, Fleet cannot now claim that its rights in the Accounts are superior to Plaintiff's rights.[6]

---

[6] Fleet may not even possess the right to setoff in the case of an event of default by Modern. Under Massachusetts law, a bank can set off funds "only if it has good reason to believe its security is inadequate." Saugus Gen. Hosp. v. Saugus Bank & Trust Co., 698 F.2d at 44-45. If a creditor is fully secured then it loses its right to a setoff. Id. Here, however, Fleet again fails to provide Plaintiff or the Court with the entire Credit Agreement or with any evidence that the security underlying the Credit Agreement is inadequate to pay any outstanding debt owed it by Modern.

11

Accordingly, there is no basis for Fleet's request that payment on the Trustee Execution be stayed. However, even if the Court stays payment as requested by Fleet, this Court should, as explained above, confirm that the accounts are effectively attached, order Fleet to identify the Accounts and monies in its possession, and allow Plaintiff to initiate expedited discovery to determine the merits of Fleet's claim to Modern's funds in the Accounts.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court enter the proposed order attached as Exhibit E, which denies the Motions of St. Paul and Fleet and orders Fleet to disburse immediately any funds it holds in the Accounts that are subject to execution by law to satisfy the Certified Judgment. Alternatively, Plaintiff requests that the Court (1) stay payment on the Trustee Execution pending a determination of the interests of St. Paul and Fleet in the Accounts; (2) confirm and clarify that the Accounts were and continue to be effectively frozen and attached by service of the Trustee Execution; (3) order Fleet to identify the Accounts and monies it holds as trustee within seven (7) days; and (4) order that Plaintiff may seek discovery regarding those funds and any alleged interests therein held by St. Paul and/or Fleet. An alternative proposed order is attached as Exhibit F.

WALTER R. KRZASTEK,

By his attorneys,

*/s/ Thomas E. Lent*
David E. Lurie (BBO# 542030)
Thomas E. Lent (BBO# 644970)
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
(617) 367-1970

Dated: April 21, 2004

12

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2004, I caused a true copy of the above document to be served by hand upon the following parties:

Eric F. Eisenberg, Esq.
Hinckley, Allen and Snyder, LLP
28 State Street
Boston, MA 02109
*Counsel for Modern Continental
Construction, Co., Inc.*

Michael David Vhay, Esq.
Piper Rudnick, LLP
One International Place
Boston, MA 02110
*Counsel for St. Paul Fire
and Marine Insurance Company*

Charles L. Solomont, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02110
*Counsel for Fleet Boston N.A.*

_____
Thomas E. Lent

13